**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| EDWARD VYSTRCIL, et al., | ) | CASE NO. 4:17CV781 |
| | ) | |
| Plaintiffs, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| vs. | ) | **OPINION AND ORDER** |
| | ) | |
| MERCY HEALTH, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**CHRISTOPHER A. BOYKO, J.**:

This matter comes before the Court upon the Motion (ECF DKT #43) of Defendant Frost-Arnett Company, Inc. for Summary Judgment. For the following reasons, the Motion is granted.

**I. BACKGROUND**

This lawsuit arose out of a debt Plaintiffs Edward and Judy Vystrcil owed for services provided to their daughter by St. Joseph Medical Center, a facility now owned by Defendant Mercy Health Youngstown LLC. Mercy Health retained Frost-Arnett to collect this debt. On March 16, 2016, Plaintiffs made full payment in the amount of $196.65 to Frost-Arnett. Despite this payment, Mercy Health referred the matter to Defendant Global Receivables

Solutions, Inc. on or about August 1, 2016, to make further efforts to collect this debt.[1]

Plaintiffs allege that Frost-Arnett attempted via telephone calls to collect on a debt that had already been paid in violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692e. Plaintiffs also allege that Frost-Arnett was negligent in failing to communicate promptly to other Defendants that the debt had been paid in full. As a result of Frost-Arnett's FDCPA violations and negligent conduct, Plaintiffs allegedly have suffered headaches, sleeplessness, nausea, embarrassment, anxiety and medical expenses.

Defendant Frost-Arnett contends that the transcript of the telephone communications shows no attempt to collect a debt. Moreover, Frost-Arnett insists that it handled the payments on the account correctly, promptly forwarded all payments to Mercy Health and provided Plaintiffs with written confirmation that the account had a zero balance. There was no duty owed to Plaintiffs that was breached and Frost-Arnett had no control over the actions of third parties like Mercy Health and Global Receivables.

## II. LAW AND ANALYSIS

**Standard of Review**

Summary judgment shall be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed.R.Civ.P. 56(a). The burden is on the moving party to conclusively show no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lansing Dairy. Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). The moving party must

---

[1] Plaintiffs have since settled their claims against Global Receivables.

either point to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials" or show "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *See* Fed.R.Civ.P. 56(c)(1)(A), (B). A court considering a motion for summary judgment must view the facts and all inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Once the movant presents evidence to meet its burden, the nonmoving party may not rest on its pleadings, but must come forward with some significant probative evidence to support its claim. *Celotex*, 477 U.S. at 324; *Lansing Dairy*, 39 F.3d at 1347.

This Court does not have the responsibility to search the record *sua sponte* for genuine issues of material fact. *Betkerur v. Aultman Hospital Ass'n*, 78 F.3d 1079, 1087 (6th Cir. 1996); *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 404-06 (6th Cir. 1992). The burden falls upon the nonmoving party to "designate specific facts or evidence in dispute," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986); and if the nonmoving party fails to make the necessary showing on an element upon which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. Whether summary judgment is appropriate depends upon "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Amway Distributors Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251-52).

**Fair Debt Collection Practices Act**

The stated purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692e.

As the Sixth Circuit has stated in *Miller v. Javitch, Block & Rathbone,* 561 F.3d 588, 592 (6th Cir. 2009), "[t]hese provisions sweep with "'extraordinar[y]' breadth," quoting *Frey v. Gangwish,* 970 F.2d 1516, 1521 (6th Cir.1992), "and call for 'strict liability, ... meaning that a consumer may recover statutory damages if the debt collector violates the FDCPA even if the consumer suffered no actual damages,'" quoting *Fed. Home Loan Mortgage Corp. v. Lamar,* 503 F.3d 504, 513 (6th Cir.2007).

The Sixth Circuit has adopted the "least-sophisticated-consumer" test when determining whether a statement by a debt collector violates the FDCPA. *Kistner v. Law Offices of Michael P. Margelefsky LLC,* 518 F.3d 433, 438-39 (6th Cir.2008). "The basic purpose of the least-sophisticated-consumer standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd." *Gionis v. Javitch, Block, Rathbone, LLP,* 238 F. App'x. 24 *3 (6th Cir. 2007), quoting *Clomon v. Jackson,* 988 F.2d 1314, 1318 (2d Cir.1993). "This effort is grounded, quite sensibly, in the assumption that consumers of below-average sophistication or intelligence are especially vulnerable to fraudulent schemes." *Gionis,* 238 F. App'x. 24 at *3, quoting *Clomon,* at 1319. "This standard 'protects naive consumers [while] prevent[ing] liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of

understanding and willingness to read with care.'" *Miller*, 561 F.3d at 592, quoting *Kistner*, 518 F.3d at 438-39. "Stated differently, we will not 'countenance lawsuits based on frivolous misinterpretations or nonsensical interpretations of being led astray.'" *Id.,* quoting *Jacobson v. Healthcare Fin. Servs. Inc.,* 434 F.Supp.2d 133 (E.D.N.Y.2006). This objective standard is "lower than simply examining whether particular language would deceive or mislead a reasonable debtor." *Smith v. Compute Credit, Inc.,* 167 F.3d 1052, 1054 (6th Cir.1999).

Section 1692e of the Act states, "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." Section 1692e(5) prohibits a "threat to take any action that cannot legally be taken or that is not intended to be taken." Section 1692e(10) prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt[.]"

"A claim under § 1692e(5) has two elements: (1) a threat to take legal action; and (2) the inability to take that action lawfully." *Barany-Snyder v. Weiner,* No. 1:06CV2111, 2007 WL 210411, *7 (N.D.Ohio Jan. 24, 2007), citing *Wright v. Asset Acceptance Corp.,* No. C-3-97-375, 1999 U.S. Dist. LEXIS 20675, *5 n. 7 (S.D.Ohio Jan. 3, 2000). "In assessing the first element, courts have consistently required some language that would lead a consumer to believe the legal right would be exercised before finding a "threat" under 15 U.S.C. § 1692e(5)." *Id.*

**Plaintiffs' FDCPA Claims**

On April 7, 2017, four weeks after this case was originally instituted in Trumbull County Common Pleas Court, an employee of Frost-Arnett called Plaintiffs. That telephone call went as follows:

> MR. VYSTRCIL: Hello?
>
> MS. GONZOLAS: Hello. This call may be monitored or recorded. This is Claudia Gonzolas and I'm trying to reach Edward Vystrcil.
>
> MR. VYSTRCIL: And who is this?
>
> MS. GONZOLAS: My name is Claudia Gonzolas and I'm calling from Frost-Arnett Company. Hello.
>
> MR. VYSTRCIL: What company is that?
>
> MS. GONZOLAS: Am I speaking to Mr. Edward Vystrcil?
>
> MR. VYSTRCIL: No. What company are you with?
>
> MS. GONZOLAS: Is this a wrong number, sir?
>
> MR. VYSTRCIL: You'll have to talk to my lawyer.

(Edward Vystrcil Deposition, ECF DKT #44-1, p.33 at 12-24).

In his sworn deposition, Plaintiff Vystrcil concedes that there was no demand for payment in this April 7, 2017 call to him, nor did Frost-Arnett try to induce payment on the account. (*Id*. at p.34 at 17-23). The Court finds that the transcribed conversation does not evidence any attempt to collect on a debt from Plaintiffs nor is there any threat of legal action.

Shortly after ending that call, Mr. Vystrcil placed a call to Frost-Arnett. Portions of that telephone conversation went as follows:

> CELIA: This call may be monitored or recorded. Thank you for calling Frost-Arnett Company. This is Celia. How can [we] help you today?
>
> * * * *
>
> MR. VYSTRCIL: Yeah. Somebody called me at this phone number and I was trying

to figure out what it was pertaining to.

* * * *

CELIA: We were trying to reach Edward Vystrcil.

* * * *

CELIA: Thank you, sir. I might advise this communication is from a debt collector. It is an attempt to collect on a debt. Any information obtained will be used for that purpose. It looks like the reason we were calling was regarding an account that was owed to St. Joseph Health Center in the amount of $221.65, but as of today, that account was returned back to them.

* * * *

CELIA: I'm sorry. Normally sometimes they will send them or they sent them in error and they realized it was an error and they recall them back, so this one was sent back today.

MR. VYSTRCIL: So do we owe that or it's an error?

CELIA: That is something that you would need to take up with St. Joseph. We don't know the reason why they get recalled. I don't know if it's an insurance payment or a payment came in. We don't know. As far as a payment coming in recently, I don't see no payments so you might want to give them a call to see if it's still owed.

MR. VYSTRCIL: Okay. Will do. Thank you.

(*Id*. at pp. 37-39).

Plaintiff testified that this debt was paid and the litigation had begun; so, he did not understand why Frost-Arnett was continuing to contact him. (*Id*. at p.40). Looking at the

language of the second telephone conversation initiated by Plaintiff, the Court does not discern an attempt by Defendant to induce payment of a debt. Although prefaced with the boilerplate warning identifying Frost-Arnett as a debt collector, the Frost-Arnett representative informed Plaintiff that the account was no longer with them. The language used by the Frost-Arnett representative cannot reasonably be interpreted to deceive or mislead a reasonable debtor under 15 U.S.C. § 1692e. Furthermore, the Court does not find a "threat" made by Frost-Arnett that would lead a consumer like Plaintiff to believe the legal right to take action in pursuit of collection would be exercised. *See* 15 U.S.C. § 1692e(5).

In Plaintiffs' Memorandum in Opposition (ECF DKT #46), Plaintiffs argue that the April 7, 2017 telephone calls also violated 15 U.S.C. § 1692c(a)(2). Plaintiffs did not allege any violations of that subsection in the Amended Complaint.

Plaintiffs may not expand the scope of their claims in an opposition to a summary judgment motion. See *Tucker v. Union of Needletrades, Industrial and Textile Employees, et al.,* 407 F.3d 784 (6th Cir. 2005). The Sixth Circuit in *Tucker* discussed the rationale against permitting the assertion of new claims in response to a summary judgment motion:

> Once a case has progressed to the summary judgment stage, therefore, "the liberal pleading standards under *Swierkiewicz* and [the Federal Rules] are inapplicable." *Gilmour v. Gates, McDonald & Co.,* 382 F.3d 1312, 1315 (11th Cir.2004) (holding that a plaintiff could not raise a new claim in response to a summary judgment motion); *see also* 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2723 (3d ed. Supp.2005) ("A non-moving party plaintiff may not raise a new legal claim for the first time in response to the opposing party's summary judgment motion. At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Rule 15(a)."). To permit a plaintiff to do otherwise would subject defendants to unfair surprise. *See*

> *Guiffre v. Local Lodge No. 1124,* No. 90-3540, 1991 WL 135576, at *5 (6th Cir. July 24, 1991) (unpublished) (refusing to hear claims raised for the first time in opposition to summary judgment because, "[h]aving received no notice of them, the defendants had no opportunity to investigate them when they conducted their own discovery"); *see also EEOC v. J.H. Routh Packing Co.,* 246 F.3d 850, 854 (6th Cir.2001) (stating that even under the liberal notice-pleading regime, the Federal Rules of Civil Procedure still require "that the complaint give the defendant fair notice of the claim and its supporting facts").

*Id.* at 788.

Therefore, the purported claim under 15 U.S.C. § 1692c(a)(2) is not properly before the Court and will not be considered.

**Plaintiffs' Negligence Claim**

Plaintiffs allege that Defendant Frost-Arnett "had a duty to communicate promptly to the other defendants that the debt had been paid in full once it learned that the other defendants were attempting to collect the debt."  (Amended Complaint, ECF DKT #29, ¶ 29). Frost-Arnett correctly notes that Plaintiffs have no legal authority for the existence of such a duty nor for a relationship between debt collector and debtor that would give rise to a duty.

It is not disputed that Frost-Arnett accepted payments by Plaintiffs on their account. Likewise, Frost-Arnett has provided evidence to demonstrate that, on March 31, 2016, it promptly forwarded Plaintiffs' payment to St. Joseph Health Center (Mercy Health).  (ECF DKT #47, Exhibit A).  Plaintiffs acknowledge, furthermore, that Frost-Arnett provided them a subsequent written communication verifying that the balance on their account was zero. (Edward Vystrcil Deposition, ECF DKT #44-1, p. 25 and Exhibit 6).  Thus, Frost-Arnett met its obligation to collect debts on behalf of Plaintiffs' creditor and fulfilled any duty to Plaintiffs to appropriately process their account payments.

**Damages**

In view of the Court's analysis of Plaintiffs' FDCPA and Negligence claims, Plaintiffs have not, and cannot, establish that any actions on the part of Frost-Arnett proximately caused their alleged damages.

### III. CONCLUSION

Plaintiffs have not "come forward with some significant probative evidence to support [their] claim[s]. *Celotex*, 477 U.S. at 324; *Lansing Dairy*, 39 F.3d at 1347. Therefore, the Motion (ECF DKT #43) of Defendant Frost-Arnett Company, Inc. for Summary Judgment is granted.

**IT IS SO ORDERED.**

                                                s/ Christopher A. Boyko
                                                **CHRISTOPHER A. BOYKO**
                                                **United States District Judge**

**Dated: May 10, 2019**